# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAROLD HESZKEL, Individually and on Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |
| MODUSLINK GLOBAL SOLUTIONS, INC., JOSEPH C. LAWLER and STEVEN G. CRANE, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Harold Heszkel ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding ModusLink Global Solutions, Inc. ("ModusLink" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased or otherwise acquired ModusLink securities between September 26, 2007 and June 8, 2012, both dates inclusive (the "Class Period"), seeking

to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under § 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder against the Company and certain of its top officials.

2.      ModusLink provides supply chain business process management solutions worldwide. ModusLink's services and solutions cover forward supply chain, aftermarket service requirements, and e-business processes. The Company was founded in 1986 and is headquartered in Waltham, Massachusetts.

3.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and accounting practices, including the Company's accounting for rebates associated with volume discounts provided by vendors. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) that the Company's accounting for rebates associated with volume discounts provided by vendors was improper and misleading; (ii) that the Company's financial statements during the Class Period did not provide a fair presentation of the Company's finances and operations; (iii) that, as a result, the Company's financial results were not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"); (iv) that the Company lacked adequate internal and financial controls; and (v) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

4.      On June 11, 2012, the Company announced that its President, Chief Executive Officer and Chairman of the Board of Directors ("Board"), Defendant Joseph C. Lawler, was immediately resigning from his positions with ModusLink and the Company's Board.  In addition, the Company also announced the immediate departure of William R. McLennan, President, Global Operations for ModusLink.

5.      Moreover, the Company also disclosed that the Audit Committee of ModusLink's Board of Directors had initiated an internal investigation, concurrent with an inquiry from the SEC, and determined that certain client contracts were not aligned consistently with the Company's practice of retaining volume discounts. Also, ModusLink announced that the Company's previously issued financial statements from fiscal years 2009 through 2011, as well as the first two quarters of fiscal 2012, and its unaudited selected financial data for fiscal years 2007 and 2008 should no longer be relied upon. According to the Company, as a result of the restatement, ModusLink expects to report downward adjustments to revenue of approximately $20 million to $30 million and negatively impact on net income during these time periods.

6.      On this news, ModusLink securities fell $1.48 per share or nearly 35%, to close at $2.78 per share.

7.      As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

10.      Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as ModusLink's principal place of business is located within this District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the attached certification, acquired ModusLink securities at artificially inflated prices during the Class Period and has been damaged thereby.

13.     Defendant ModusLink is a Delaware corporation with principal executive offices located at 1601 Trapelo Road, Suite 170, Waltham, MA 02451. ModusLink's common stock trades on the NASDAQ Global Market ("NASDAQ") under the ticker symbol "MLNK."

14.     Defendant Joseph C. Lawler ("Lawler") was, at all relevant times, the President, Chief Executive Officer, Chairman and a director of ModusLink.

15.     Defendant Steven G. Crane ("Crane") was, at all relevant times, the Chief Financial Officer of ModusLink. In addition, Mr. Crane served as the Treasurer of the Company from April 2007 through June 2008.

16.     The defendants referenced above in ¶¶ 14 and 15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     ModusLink, through its subsidiaries, provides supply chain business process management solutions worldwide.  The Company's services and solutions cover forward supply chain, aftermarket service requirements, and e-business processes. Its services include sourcing and supply base management, manufacturing and product configuration, fulfillment and

distribution, e-business, and aftermarket services, such as returns management and asset disposition; and consumer-electronics repair and reverse logistics services. ModusLink's clients include hardware manufacturers, software publishers, telecommunications carriers, broadband and wireless service providers, and consumer electronics companies. In addition, the Company, through its venture capital business, invests in early-stage technology companies.

18.     ModusLink, formerly known as CMGI, Inc., was founded in 1986 and is headquartered in Waltham, Massachusetts.  The Company changed its name from CMGI, Inc. to ModusLink Global Solutions, Inc. on September 29, 2008.

**Materially False and Misleading**
**Statements Issued During the Class Period**

19.     On September 26, 2007, ModusLink issued a press release announcing its financial and operating results for the fourth quarter of fiscal 2007 and for the fiscal year ended July 31, 2007.  For the fourth quarter, the Company reported net loss of $6.2 million, or ($0.01) diluted earnings per share ("EPS") and net revenue of $252.6 million, as compared to net loss of $2.5 million or ($0.01) diluted EPS and net revenue of $261.9 million for the same period a year ago.  For the fiscal year, the Company reported net income of $49.4 million or $0.10 per diluted EPS and net revenue of $1.14 billion, as compared to net income of $14.9 million, or $0.03 diluted EPS and net revenue of $1.15 billion for the same period a year ago.

20.     On October 15, 2007, the Company filed an annual report for the period ended July 31, 2007 on Form 10-K with the SEC, which was signed by, among others, Defendants Lawler and Crane, and reiterated the Company's previously announced annual financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Lawler and Crane, stating that the financial

information contained in the Form 10-K was accurate and that they disclosed any material

changes to the Company's internal control over financial reporting.  The Form 10-K provided the

following regarding its revenue recognition policies:

> The Company derives its revenue primarily from the sale of products, supply chain management services and other services. Revenue is recognized as product is shipped and related services are performed in accordance with all applicable revenue recognition criteria.

> The Company recognizes revenue when persuasive evidence of an arrangement exists, title and risk of loss have passed or services have been rendered, the sales price is fixed or determinable and collection of the related receivable is reasonably assured in accordance with the Securities and Exchange Commission's ("SEC") Staff Accounting Bulletin No. 104 ("SAB No. 104"). The Company also follows the guidance of the Financial Accounting Standards Board's ("FASB") Emerging Issues Task Force ("EITF") Issue No. 99-19, "Reporting Revenue Gross as a Principal versus Net as an Agent." The Company's application of EITF 99-19 includes evaluation of the terms of each major client contract relative to a number of criteria that management considers in making its determination with respect to gross versus net reporting of revenue for transactions with its clients. Management's criteria for making these judgments place particular emphasis on determining the primary obligor in a transaction and which party bears general inventory risk. The Company records all shipping and handling fees billed to clients as revenue, and related costs as cost of sales, when incurred, in accordance with EITF 00-10, "Accounting for Shipping and Handling Fees and Costs."

> The Company also follows the guidance of EITF Issue No. 00-21, "Accounting for Revenue Arrangements with Multiple Deliverables". This issue addresses determination of whether an arrangement involving more than one deliverable contains more than one unit of accounting and how the arrangement consideration should be measured and allocated to the separate units of accounting. For those contracts which contain multiple deliverables, management must first determine whether each service, or deliverable, meets the separation criteria of EITF 00-21. In general, a deliverable (or a group of deliverables) meets the separation criteria if the deliverable has standalone value to the client and if there is objective and reliable evidence of the fair value of the remaining deliverables in the arrangement. Each deliverable that meets the separation criteria is considered a "separate unit of accounting." Management allocates the total arrangement consideration to each separate unit of accounting based on the relative fair value of each separate unit of accounting. The amount of arrangement consideration that is allocated to a unit of accounting that has already been delivered is limited to the amount that is not contingent upon the delivery of another separate unit of accounting. After the arrangement consideration has been allocated to each

separate unit of accounting, management applies the appropriate revenue recognition method for each separate unit of accounting as described previously based on the nature of the arrangement. All deliverables that do not meet the separation criteria of EITF 00-21 are combined into one unit of accounting and the appropriate revenue recognition method is applied.

21.     On December 3, 2007, ModusLink issued a press release announcing its financial and operating results for the first quarter of fiscal 2008, ending October 31, 2007.  For the quarter, the Company reported net income of $8.6 million, or $.18 diluted EPS and net revenue of $274.7 million, as compared to net income of $10.3 million or $0.21 diluted EPS and net revenue of $283.6 million for the same period a year ago.

22.     On December 10, 2007, the Company filed a quarterly report for the period ended October 31, 2007 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

23.     On March 10, 2008, ModusLink issued a press release announcing its financial and operating results for the second quarter of fiscal 2008, ending January 31, 2008. For the quarter, the Company reported net income of $27.8 million, or $0.58 diluted EPS and net revenue of $278 million, as compared to net income of $35.9 million or $0.74 diluted EPS and net revenue of $324.8 million for the same period a year ago.

24.     On March 11, 2008, the Company filed a quarterly report for the period ended January 31, 2008 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position.

In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

25.       On June 9, 2008, ModusLink issued a press release announcing the Company's financial and operating results for the third quarter of fiscal 2008 ending April 30, 2008.  For the quarter, the Company reported net loss of $2.6 million, or ($0.05) diluted EPS and net revenue of $239.2 million, as compared to net income of $9.4 million or $0.19 diluted EPS and net revenue of $282.1 million for the same period a year ago.

26.       On June 9, 2008, the Company filed a quarterly report for the period ended April 30, 2008 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

27.       On September 29, 2008, ModusLink issued a press release announcing its financial and operating results for the fourth quarter of fiscal 2008 and for the fiscal year ended July 31, 2008.  For the quarter, the Company reported net loss of $22.7 million, or ($0.48) diluted EPS and net revenue of $276.3 million, as compared to net loss of $6.2 million or ($0.13) diluted EPS and net revenue of $252.6 million for the same period a year ago.  For the fiscal year, the Company reported net income of $11.1 million, or $0.23 diluted EPS and net revenue of $1.1 billion, as compared to net income of $49.4 million, or $1.01 diluted EPS and net revenue of $1.1 billion for the same period a year ago.

28.      On October 14, 2008, the Company filed an annual report for the period ended July 31, 2008 on Form 10-K with the SEC, which was signed by, among others, Defendants Lawler and Crane, and reiterated the Company's previously announced annual financial results and financial position.   In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.   The Form 10-K provided the following regarding its revenue recognition policies:

> The Company derives its revenue primarily from the sale of products, supply chain management services and other services. Revenue is recognized as product is shipped and related services are performed in accordance with all applicable revenue recognition criteria.
>
> The Company recognizes revenue when persuasive evidence of an arrangement exists, title and risk of loss have passed or services have been rendered, the sales price is fixed or determinable and collection of the related receivable is reasonably assured in accordance with the Securities and Exchange Commission's ("SEC") Staff Accounting Bulletin No. 104 ("SAB No. 104"). The Company also follows the guidance of the Financial Accounting Standards Board's ("FASB") Emerging Issues Task Force ("EITF") Issue No. 99-19, "Reporting Revenue Gross as a Principal versus Net as an Agent." The Company's application of EITF 99-19 includes evaluation of the terms of each major client contract relative to a number of criteria that management considers in making its determination with respect to gross versus net reporting of revenue for transactions with its clients. Management's criteria for making these judgments place particular emphasis on determining the primary obligor in a transaction and which party bears general inventory risk. The Company records all shipping and handling fees billed to clients as revenue, and related costs as cost of sales, when incurred, in accordance with EITF 00-10, "Accounting for Shipping and Handling Fees and Costs."
>
> The Company applies the provisions of Statement of Position 97-2, "Software Revenue Recognition", as amended by Statement of Position 98-9 Modifications of Statement of Position 97-2, Software Revenue Recognition", with respect to certain transactions involving the sale of software products by our subsidiary OCS. OCS did not recognize any software revenue for the fiscal year ended July 31, 2008.

{00048452;3 }

9

The Company also follows the guidance of EITF Issue No. 00-21, "Accounting for Revenue Arrangements with Multiple Deliverables". This issue addresses determination of whether an arrangement involving more than one deliverable contains more than one unit of accounting and how the arrangement consideration should be measured and allocated to the separate units of accounting. For those contracts which contain multiple deliverables, management must first determine whether each service, or deliverable, meets the separation criteria of EITF 00-21. In general, a deliverable (or a group of deliverables) meets the separation criteria if the deliverable has standalone value to the client and if there is objective and reliable evidence of the fair value of the remaining deliverables in the arrangement. Each deliverable that meets the separation criteria is considered a "separate unit of accounting." Management allocates the total arrangement consideration to each separate unit of accounting based on the relative fair value of each separate unit of accounting. The amount of arrangement consideration that is allocated to a unit of accounting that has already been delivered is limited to the amount that is not contingent upon the delivery of another separate unit of accounting. After the arrangement consideration has been allocated to each separate unit of accounting, management applies the appropriate revenue recognition method for each separate unit of accounting as described previously based on the nature of the arrangement. All deliverables that do not meet the separation criteria of EITF 00-21 are combined into one unit of accounting and the appropriate revenue recognition method is applied.

29.     On December 4, 2008, ModusLink issued a press release announcing its financial and operating results for the first quarter of fiscal 2009, ended October 31, 2008.  For the quarter, the Company reported net loss of $18.6 million, or ($0.41) diluted EPS and net revenue of $291.4 million, as compared to net income of $8.6 million, or $0.18 diluted EPS and net revenue of $274.7 million for the same period a year ago.

30.     On December 10, 2008, the Company filed a quarterly report for the period ended October 31, 2008 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over

financial reporting.

31.       On March 10, 2009, ModusLink issued a press release announcing its financial and operating results for the second quarter of fiscal 2009, ended January 31, 2009. For the quarter, the Company reported net loss of $168.8 million, or ($3.73) diluted EPS and net revenue of $260.5 million, as compared to net income of $27.8 million, or $0.58 diluted EPS and net revenue of $278 million for the same period a year ago.

32.       On March 12, 2009, the Company filed a quarterly report for the period ended January 31, 2009 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

33.       On June 9, 2009, ModusLink issued a press release announcing its financial and operating results for the third quarter of fiscal 2009, ended April 30, 2009. For the quarter, the Company reported net loss of $1.9 million, or ($0.04) diluted EPS and net revenue of $231.5 million, as compared to net loss of $2.6 million, or ($0.05) diluted EPS and net revenue of $239.2 million for the same period a year ago.

34.       On June 9, 2009, the Company filed a quarterly report for the period ended April 30, 2009 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that

they disclosed any material changes to the Company's internal control over financial reporting.

35.      On September 29, 2009, ModusLink issued a press release announcing its financial and operating results for the fourth quarter of fiscal 2009 and fiscal year ended July 31, 2009. For the quarter, the Company reported net loss of $4.1 million, or ($0.09) diluted EPS and net revenue of $225.2 million, as compared to net loss of $24.7 million or ($0.53) diluted EPS and net revenue of $276.3 million for the same period a year ago.  For the fiscal year, the Company reported net loss of $193.5 million, or ($4.26) diluted EPS and net revenue of $1 billion, as compared to net income of $9.1 million, or $0.19 diluted EPS and net revenue of $1.1 billion for the same period a year ago.

36.      On October 14, 2009, the Company filed an annual report for the period ended July 31, 2009 on Form 10-K with the SEC, which was signed by, among others, Defendants Lawler and Crane, and reiterated the Company's previously announced annual financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.  The Form 10-K provided the following regarding its revenue recognition policies:

> The Company's revenue primarily comes from the sale of supply chain management services to our clients. Amounts billed to clients under these arrangements include revenues attributable to the services performed as well as for materials procured on our clients' behalf as part of our service to them. Other sources of revenue include the sale of products and other services. Revenue is recognized for services when the services are performed and for product sales when the products are shipped assuming all other applicable revenue recognition criteria are met.
>
> The Company recognizes revenue when persuasive evidence of an arrangement exists, title and risk of loss have passed or services have been rendered, the sales

price is fixed or determinable and collection of the related receivable is reasonably assured in accordance with the SEC Staff Accounting Bulletin No. 104 ("SAB No. 104"). The Company's standard sales terms are FOB shipping point, which means that risk of loss passes to the customer when it is shipped from the ModusLink location. The Company also follows the guidance of the FASB Emerging Issues Task Force ("EITF") Issue No. 99-19, "Reporting Revenue Gross as a Principal versus Net as an Agent." The Company's application of EITF 99-19 includes evaluation of the terms of each major client contract relative to a number of criteria that management considers in making its determination with respect to gross versus net reporting of revenue for transactions with its clients. Management's criteria for making these judgments place particular emphasis on determining the primary obligor in a transaction and which party bears general inventory risk. The Company records all shipping and handling fees billed to clients as revenue, and related costs as cost of sales, when incurred, in accordance with EITF 00-10, "Accounting for Shipping and Handling Fees and Costs."

The Company applies the provisions of Statement of Position 97-2, "Software Revenue Recognition" as amended by Statement of Position 98-9, "Modification of SOP 97-2, Software Revenue Recognition", with respect to certain transactions involving the sale of software products by our subsidiary ModusLink OCS. The Company also follows the guidance of EITF Issue No. 00-21, "Accounting for Revenue Arrangements with Multiple Deliverables". This issue addresses determination of whether an arrangement involving more than one deliverable contains more than one unit of accounting and how the arrangement consideration should be measured and allocated to the separate units of accounting. For those contracts which contain multiple deliverables, management must first determine whether each service, or deliverable, meets the separation criteria of EITF 00-21. In general, a deliverable (or a group of deliverables) meets the separation criteria if the deliverable has standalone value to the client and if there is objective and reliable evidence of the fair value of the remaining deliverables in the arrangement. Each deliverable that meets the separation criteria is considered a "separate unit of accounting." Management allocates the total arrangement consideration to each separate unit of accounting based on the relative fair value of each separate unit of accounting. The amount of arrangement consideration that is allocated to a unit of accounting that has already been delivered is limited to the amount that is not contingent upon the delivery of another separate unit of accounting. After the arrangement consideration has been allocated to each separate unit of accounting, management applies the appropriate revenue recognition method for each separate unit of accounting as described previously based on the nature of the arrangement. All deliverables that do not meet the separation criteria of EITF 00-21 are combined into one unit of accounting and the appropriate revenue recognition method is applied.

37.     On December 7, 2009, ModusLink issued a press release announcing its financial

and operating results for the first quarter of fiscal 2010 ended October 31, 2009. For the quarter, the Company reported net income of $8.6 million, or $0.19 diluted EPS and net revenue of $246.7 million, as compared to net loss of $18.6 million, or ($0.41) diluted EPS and net revenue of $291.4 million for the same period a year ago.

38.       On December 10, 2009, the Company filed a quarterly report for the period ended October 31, 2009 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

39.       On March 8, 2010, ModusLink issued a press release announcing its financial and operating results for the second quarter of fiscal 2010 ended January 31, 2010. For the quarter, the Company reported net income of $2.6 million, or $0.06 diluted EPS and net revenue of $235.5 million, as compared to net loss of $168.8 million, or ($3.73) diluted EPS and net revenue of $260.5 million for the same period a year ago.

40.       On March 12, 2010, the Company filed a quarterly report for the period ended January 31, 2010 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

41.      On June 8, 2010, ModusLink issued a press release announcing its financial and operating results for the third quarter of fiscal 2010 ended April 30, 2010. For the quarter, the Company reported net loss of $3.4 million, or ($0.08) diluted EPS and net revenue of $213.7 million, as compared to net loss of $1.9 million, or ($0.04) diluted EPS and net revenue of $231.5 million for the same period a year ago.

42.      On June 9, 2010, the Company filed a quarterly report for the period ended April 30, 2010 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

43.      On September 28, 2010, ModusLink issued a press release announcing its financial and operating results for the fourth quarter of fiscal 2010 and fiscal year ended July 31, 2010. For the quarter, the Company reported net loss of $25.5 million, or ($0.58) diluted EPS and net revenue of $228.1 million, as compared to net loss of $4.1 million or ($0.09) diluted EPS and net revenue of $225.2 million for the same period a year ago.  For the fiscal year, the Company reported net loss of $18 million, or ($0.40) diluted EPS and net revenue of $924 million, as compared to net loss of $193.5 million, or ($4.26) diluted EPS and net revenue of $1 billion for the same period a year ago.

44.      On October 14, 2010, the Company filed an annual report for the period ended July 31, 2010 on Form 10-K with the SEC, which was signed by, among others, Defendants Lawler and Crane, and reiterated the Company's previously announced annual financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to

SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal control over financial reporting. The Form 10-K provided the following regarding its revenue recognition policies:

> The Company's revenue primarily comes from the sale of supply chain management services to our clients. Amounts billed to clients under these arrangements include revenues attributable to the services performed as well as for materials procured on our clients' behalf as part of our service to them. Other sources of revenue include the sale of products and other services. Revenue is recognized for services when the services are performed and for product sales when the products are shipped assuming all other applicable revenue recognition criteria are met.
>
> The Company recognizes revenue when persuasive evidence of an arrangement exists, title and risk of loss have passed or services have been rendered, the sales price is fixed or determinable and collection of the related receivable is reasonably assured in accordance with the provisions under the Accounting
>
> Standards Codification ("ASC") Topic 605, "Revenue Recognition" ("ASC Topic 605"). The Company's standard sales terms are FOB shipping point, which means that risk of loss passes to the customer when it is shipped from the ModusLink location. The Company also evaluates the terms of each major client contract relative to a number of criteria that management considers in making its determination with respect to gross versus net reporting of revenue for transactions with its clients. Management's criteria for making these judgments place particular emphasis on determining the primary obligor in a transaction and which party bears general inventory risk. The Company records all shipping and handling fees billed to clients as revenue, and related costs as cost of sales, when incurred, in accordance with ASC Topic 605.

45.     On December 6, 2010, ModusLink issued a press release announcing its financial and operating results for the first quarter of fiscal 2011 ended October 31, 2010. For the quarter, the Company reported net loss of $6.7 million, or ($0.15) diluted EPS and net revenue of $236.4 million, as compared to net income of $8.6 million, or $0.19 diluted EPS and revenue of $246.7 million for the same period a year ago.

46.     On December 10, 2010, the Company filed a quarterly report for the period ended October 31, 2010 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

47.     On March 7, 2011, ModusLink issued a press release announcing its financial and operating results for the second quarter of fiscal 2011 ended January 31, 2011. For the quarter, the Company reported net loss of $28.3 million, or ($0.65) diluted EPS and net revenue of $234.2 million, as compared to net income of $2.6 million, or $0.06 diluted EPS and revenue of $235.5 million for the same period a year ago.

48.     On March 14, 2011, the Company filed a quarterly report for the period ended January 31, 2011 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

49.     On June 7, 2011, ModusLink issued a press release announcing its financial and operating results for the third quarter of fiscal 2011 ended April 30, 2011. For the quarter, the Company reported net loss of $5.1 million, or ($0.12) diluted EPS and net revenue of $207.1

million, as compared to net loss of $3.4 million, or ($0.08) diluted EPS and revenue of $213.7 million for the same period a year ago.

50.     On June 9, 2011, the Company filed a quarterly report for the period ended April 30, 2011 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

51.     On September 27, 2011, ModusLink issued a press release announcing its financial and operating results for the fourth quarter of fiscal 2011 and fiscal year ended July 31, 2011. For the quarter, the Company reported net loss of $8.9 million, or ($0.21) diluted EPS and net revenue of $198.8 million, as compared to net loss of $25.5 million or ($0.58) diluted EPS and net revenue of $228.1 million for the same period a year ago.  For the fiscal year, the Company reported net loss of $49 million, or ($1.13) diluted EPS and net revenue of $876.5 million, as compared to net loss of $18 million, or ($0.40) diluted EPS and net revenue of $924 million for the same period a year ago.

52.     On October 14, 2011, the Company filed an annual report for the period ended July 31, 2011 on Form 10-K with the SEC, which was signed by among others, Defendants Lawler and Crane, and reiterated the Company's previously announced annual financial results and financial position.  In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-K was accurate and that they disclosed any material changes to the Company's internal

control over financial reporting.  The Form 10-K provided the following regarding its revenue recognition policies:

> The Company's revenue primarily comes from the sale of supply chain management services to our clients. Amounts billed to clients under these arrangements include revenues attributable to the services performed as well as for materials procured on our clients' behalf as part of our service to them. Other sources of revenue include the sale of products and other services. Revenue is recognized for services when the services are performed and for product sales when the products are shipped assuming all other applicable revenue recognition criteria are met.
>
> The Company recognizes revenue when persuasive evidence of an arrangement exists, title and risk of loss have passed or services have been rendered, the sales price is fixed or determinable and collection of the related receivable is reasonably assured in accordance with the provisions under the Accounting Standards Codification ("ASC") Topic 605, "Revenue Recognition" ("ASC Topic 605"). The Company's standard sales terms are FOB shipping point, which means that risk of loss passes to the customer when it is shipped from the ModusLink location. The Company also evaluates the terms of each major client contract relative to a number of criteria that management considers in making its determination with respect to gross versus net reporting of revenue for transactions with its clients. Management's criteria for making these judgments place particular emphasis on determining the primary obligor in a transaction and which party bears general inventory risk. The Company records all shipping and handling fees billed to clients as revenue, and related costs as cost of sales, when incurred, in accordance with ASC Topic 605.

53.     On December 5, 2011, ModusLink issued a press release announcing its financial and operating results for the first quarter of fiscal 2012 ended October 31, 2011. For the quarter, the Company reported net income of $1.6 million, or $0.04 diluted EPS and net revenue of $206.2 million, as compared to net loss of $6.7 million, or ($0.15) diluted EPS and revenue of $236.4 million for the same period a year ago.

54.     On December 12, 2011, the Company filed a quarterly report for the period ended October 31, 2011 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position.

In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

55.     On March 7, 2012, ModusLink issued a press release announcing its financial and operating results for the second quarter of fiscal 2012 ended January 31, 2012. For the quarter, the Company reported net loss of $12.6 million, or ($0.29) diluted EPS and net revenue of $178.6 million, as compared to net loss of $28.3 million, or ($0.65) diluted EPS and revenue of $234.2 million for the same period a year ago.

56.     On March 12, 2012, the Company filed a quarterly report for the period ended January 31, 2012 on Form 10-Q with the SEC, which was signed by Defendant Crane, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Lawler and Crane, stating that the financial information contained in the Form 10-Q was accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

57.     The statements referenced in ¶¶ 19-56 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (i) that the Company's accounting for rebates associated with volume discounts provided by vendors was improper and misleading; (ii) that the Company's financial statements during the Class Period did not provide a fair presentation of the Company's finances and operations; (iii) that, as a result, the Company's financial results were not prepared in accordance with GAAP; (iv) that the

Company lacked adequate internal and financial controls; and (v) that, as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

## THE TRUTH BEGINS TO EMERGE

58.     On June 11, 2012, the Company disclosed that Defendant Lawler was retiring as the Company's President and CEO and stepping down immediately from its Board of Directors. Also, the Company announced the immediate departure of William R. McLennan as the President of Global Operations for ModusLink.  The Company also disclosed the delay in filings its Form 10-Q for the second quarter of fiscal year 2012 ended January 31, 2012, due to the following:

> As previously disclosed in its Form 10-Q filed for the second quarter of fiscal 2012 ended January 31, 2012, ModusLink received an inquiry from the SEC regarding the Company's treatment of rebates associated with volume discounts provided by vendors. ModusLink leverages its aggregated volume purchasing power with vendors and uses volume discounts to manage the costs of materials used in client programs over time, which it believes leads to improved and stable pricing for its clients. Concurrent with the inquiry, the Audit Committee of the Company's Board of Directors initiated an internal investigation and has determined that certain client contracts have not been aligned consistently with ModusLink's practice of retaining volume discounts. In the course of this investigation, the Audit Committee also identified limited instances where vendor costs incurred were marked-up to clients in a manner not consistent with client contracts. ModusLink is communicating with its clients and working closely with them to review these issues.

> Where such volume discounts and mark-ups were retained by ModusLink consistent with client contracts, the Company continues to believe that the accounting remains correct, as previously stated in its Form 10-Q filed for the second quarter of fiscal 2012. Based on the preliminary results of the Company's accounting evaluation done in connection with the investigation, however, the Company believes it is no longer able to conclude that amounts from such volume discounts and mark-ups, where now found to be inconsistent with client contracts, were correctly accounted for as revenue. As soon as practicable, the Company expects to restate its audited financial statements from fiscal years 2009 through 2011, as well as the first two quarters of fiscal 2012 and its unaudited selected financial data for fiscal years 2007 and 2008. As a result of the restatement, the Company expects to report downward adjustments to revenue of approximately

$20 million to $30 million over a period in which aggregate reported revenue was $5.4 billion and aggregate reported net loss was $213 million, inclusive of $232 million of impairments related to goodwill and intangible assets. In addition, the Company expects that the restatement will negatively impact net income, by a lesser amount.

As a result of the accounting evaluation conducted to date, the Audit Committee has assessed the impact of errors in the Company's financial statements from fiscal years 2009 through 2011, as well as the first two quarters of fiscal 2012 and its unaudited selected financial data for fiscal years 2007 and 2008 and, on June 9, 2012, concluded that those previously issued financial statements should no longer be relied upon.

Management is continuing to assess the Company's internal control over financial reporting and its disclosure controls and procedures, and expects to conclude that the Company has a material weakness in its internal control over financial reporting. Management will report its conclusion on internal control over financial reporting and disclosure controls and procedures upon completion of the restatement process.

The Audit Committee and management have discussed the matters disclosed in this press release with the Company's independent registered public accounting firm, KPMG LLP.

Based upon the time required to thoroughly review the current and historical financial data, ModusLink is delaying the filing of its Form 10-Q for the third quarter of fiscal 2012 ended April 30, 2012.

In conjunction with the Company's inability to timely file its Form 10-Q, ModusLink expects to receive a letter from NASDAQ notifying the Company that it is non-compliant with NASDAQ Listing Rules, which require listed companies to timely file all required periodic financial reports with the SEC.

59.     On this news, ModusLink's stock price plunged 34.74% or $1.48 per share, to

close at $2.78 on June 11, 2012.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or

otherwise acquired ModusLink securities during the Class Period (the "Class"); and were

damaged thereby.  Excluded from the Class are the defendants named herein, as well as any

person who was at any relevant time an officer or director of the Company, a member of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

61.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, ModusLink securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by ModusLink or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

62.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

63.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

64.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of ModusLink;

- whether the Individual Defendants caused ModusLink to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of ModusLink securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

65.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

66.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- ModusLink securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold ModusLink securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

67.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of
### Section 10(b) And Rule 10b-5 Promulgated Thereunder)

68.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

69.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

70.     During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of ModusLink securities; and (iii) cause Plaintiff and other members of the Class to purchase or

otherwise acquire ModusLink securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

71.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for ModusLink securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about ModusLink's finances and business prospects.

72.     By virtue of their positions at ModusLink, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants.  Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth.  In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

73.     Information showing that defendants acted knowingly or with reckless disregard for the truth is within defendants' knowledge and control.  As the senior managers and/or directors of ModusLink, the Individual Defendants had knowledge of the details of ModusLink's internal affairs.

74.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.   Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of ModusLink.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to ModusLink's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of ModusLink securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning ModusLink's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased or otherwise acquired ModusLink securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

75.     During the Class Period, ModusLink securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of ModusLink securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of ModusLink securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.   The market price of ModusLink securities

declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

76.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

77.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

78.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     During the Class Period, the Individual Defendants participated in the operation and management of ModusLink, and conducted and participated, directly and indirectly, in the conduct of ModusLink's business affairs.  Because of their senior positions, they knew the adverse non-public information about ModusLink's misstatement of income and expenses and false financial statements.

80.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to

ModusLink's financial condition and results of operations, and to correct promptly any public statements issued by ModusLink which had become materially false or misleading.

81.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which ModusLink disseminated in the marketplace during the Class Period concerning ModusLink's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause ModusLink to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of ModusLink within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of ModusLink securities.

82.     Each of the Individual Defendants, therefore, acted as a controlling person of ModusLink.   By reason of their senior management positions and/or being directors of ModusLink, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, ModusLink to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of ModusLink and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

83.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by ModusLink.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 11, 2012                                  Respectfully submitted,

**BERMAN DEVALERIO**
/s/ Nathaniel L. Orenstein
Nathaniel L. Orenstein (BBO #664513)
Norman Berman (BBO #040460)
One Liberty Square
Boston, Massachusetts 02109
Telephone:  (617) 542-8300
Facsimile:  (617) 542-1194

**POMERANTZ HAUDEK
     GROSSMAN & GROSS, LLP**
Marc I. Gross
Jeremy A. Lieberman
Gustavo F. Bruckner
Ofer Ganot
100 Park Avenue – 26th Floor
New York, New York 10017-5516
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665

**POMERANTZ HAUDEK**
**GROSSMAN & GROSS, LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street – Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## PLAINTIFF'S CERTIFICATION

Harold Heszkel ("Plaintiff") declares under penalty of perjury, as to the claims asserted under the federal securities laws, that:

1.     Plaintiff has reviewed the complaint and authorized the commencement of an action on Plaintiff's behalf.

2.     Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.     Plaintiff's transactions in ModusLink Global Solutions, Inc. securities during the Class Period specified in the Complaint are as follows:

| Date | # of Shares Acquired | # of Shares Sold | Price |
|------|---------------------|------------------|-------|
| 11/2/2007 | 100 | | 1037 |

5.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

7.     Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this _lo dh_ day of July 2012     at     _Brooklyn NY_
                                                    (City, State)

_Harold Heszkel_
Harold Heszkel (Signature)